This is it. Let me call the record. The first case this morning, the first five cases on the home line, 1095, dry out products against Johnson and Leckie, Mr. Weiss. Good morning, Your Honor. With the court's permission, I'd like the court to hand over these exhibits, which I deserve. Have you accepted the story? I've written a letter to the court, these were admitted to the trial court. These are the exhibits. You show this to the trial court. These are the exhibits. So show them to your Honor. Do you wish to announce the subject of the case? Yes, Your Honor. Yes, Your Honor. One of each, there's two separate ones. One with a copper coating and one with a black coating. Okay, please proceed. Yes, thank you, Your Honor. So this case involves a method of fusing copper wire, insulated wire to a terminal in an armature. And what you have before you are an armature with a copper surface and an armature with a graphite surface. What happened was, over here is a- Please try and stay close to the microphone so that we can record what you're saying. Okay, I'm sorry. Over there is a depiction of the prior art method of fusing a wire to a terminal. Now, what's I'm trying to point out? On the upper left is a graphic description of it, and at the right is a photograph. What you have is one electrode touching the top, one electrode touching the copper surface, and you make a circuit, and then you fuse the wire. The market-driven need came when there came a time- Well, I mean, I assume here what you're about to argue is to try to persuade us. Your point in what you're going through is to try to persuade us that you have what should have gotten us some judgment about business. Correct. Well, I have a threshold problem, I guess, with that analysis, and that is that, well, what are you appealing here, Judge? Appealing a final judgment of patent infringement. And that was based on what? I mean, initially, your motion for summary judgment was rejected. There was denial without just stating that there were numerous issues of material fact with leave to renewal as a rule 50. No material facts existed, none listed, no opposition papers were filed. Well, it seems to me it would behoove you to challenge the grounds upon which summary judgment was granted to the other side and rejected on your side, as opposed to the merits of the obviousness analysis. It seems to me you have a threshold burden here, and it doesn't necessarily have anything to do with the ultimate outcome of your obviousness analysis. Well, yes, Your Honor. But I think the question of whether or not the invention is obvious is a question of law. So in the first instance, we presented it to the court in the form of a summary judgment. Well, the ultimate question of obviousness is a question of law, but do you agree that it's predicated on factual questions that underlie the ultimate determination of the law? Well, Your Honor, in any summary judgment, it's always questions of fact. And if those facts are disputed, then it's not necessarily appropriate for summary judgment. Well, but here there weren't any material facts disputed. If you look at the invention, let's see what the invention was in the claims court. What happened was, you had the armature with a copper surface. A mockature of the lead came where they had to detect this copper surface. And it was one of ordinary skill in the art. There was an agreement on it, an engineer with experience in the field. We pointed out in our papers that Mr. Mangan, their expert, and us agreed that a person of ordinary skill in the art is someone trying to solve problems with resistance welding and fusing. That was Mr. Mangan's report, appendix 1995 and 218. And the appendix at page 262 in Johnson's papers, Johnson said, quote, footnote 10. Johnson agrees with Plankton that a person of ordinary skill in the art in the relevant time frame would have been a technician or engineer with at least five years experience in design, and it goes on. So there was no dispute. There was an agreement between Johnson and Joyow as to what a person of ordinary skill in the art would be. And initially, we had an expert that we were prepared to present. We knew something was on the rise, so we started getting that expert. So at some point, at least, we recognized the need for you to put forward some expert testimony to establish what the prior art was and how long it was true, the prior art, am I right about that? With respect to our 102 defense, our original defense for invalidity was 102, anticipation, and 103, obviousness. Anticipation, for fact, obviousness, a question of long. So yes, we did have an expert. We wanted the expert to explain how long the prior art had. Would they discuss a series arrangement includes two on top? So that was for our 102 anticipation defense. But the district court, correct me if I'm wrong, the district court judge here said we need experts on these questions. That, right, she said she needs expert testimony on these questions. She was unwilling to accept attorney argument on a lot of questions with respect to what the prior art was and motivation might have been, etc., right? Except this wasn't attorney argument. This was documentary evidence. There's a point where the documents speak for itself. In other words, once you place this graphite covering over here, once you've placed it over there, where else would you put that second electrode? As, but for on the top, as KSR said, there's a market-driven need. When you cover this here, you have one electrode here on the side, one on the top, you have to protect this. So where do you put the second electrode? You put the second electrode on top. The, Mr. Mangan admitted that the patent claims basically- Who is the- I'm sorry, Mr. Mangan was Joyelle's expert. The patent claims, if you go through the claim language, they all claim just one difference between the prior art and its documents, the prior art and the invention. And that's placing both on top. Claim one, for example, says that the invention is putting the armature wire on one surface and the electrodes on another surface, meaning the electrodes are on a surface other than the surface of the armature wire. You can see in the prior art, you have a continuous surface from the copper to the tank top. In the inventive method, you have both electrodes on the surface other than the surface touching the wire. So that's one way of saying they're both on top, because that's the only place to put it when you put the graphite there. Mr. Weiss, when you withdrew your expert, what was the response of the district court? Did the court say that expert testimony was necessary in order to permit weighing the views on this question? Well, on the eve of trial, our adversary moved to strike on the grounds we didn't have an expert. And on the Friday before the Monday of picking the jury, the court said the validity defense was struck because you don't have an expert. But we had pointed out in our opposition that you don't need an expert, number one. Number two, the expert in the testimony we needed to offer was for our one-on-two defense, our anticipation, explaining the prior art, which is a question of fact, what the prior art covers. But for the obviousness defense, if this isn't KSR, then in all due respect, I don't know what is. Well, isn't some expert analysis with respect to what the prior art does also relevant in the obviousness analysis? Not if there's an admission that the only difference... If you have an admission that the only difference between the prior art and the invention is the location of the two electrodes, and if each claim claims the same thing, for instance, claim three says the electrodes are on a common surface. That's another way of saying they're both on top, because that's the only other common surface if you look at the model that it could be at. Claim four says both of the electrodes are used to apply the pressure instead of just one, because they're both on top. Claim 16 says one electrode is between the other electrode and the free end of the terminal. It means they're both on top. In other words, there's an admissions in Mr. Magnin's report. There are statements in the prosecution history or documents that say the only difference, the only difference between the prior art and this invention is the location of the second electrode on top instead of on the commutator bar. One of the claims says that... Claims that the electrode must be remote from the commutator bar. Obviously, it's off the bar and on the top. Each claim says the same thing, that you're moving the electrode from the side and the top to the only other place in the KSR that you can move it, and that's the top. This is not a finite number of locations, this is one location. So in the absence of an expert to state that it would have been obvious to move the electrode, how did this position, this argument, this evidence come before the district court? By the motion to summary judgment, by the prosecution history, by the patents, by the water prior art, which was a record, which had every single limitation except both electrodes on top. That's okay. The property pact itself says that the purpose of the invention is where to locate the second electrode when you cover the top of the face with graphite. So that's KSR. If that's not KSR, I don't know in all due respect what would be. Now you're asking us to weigh the evidence, and of course we don't have the facts before us either, other than to the extent that they've been argued. I'm trying to understand what that would mean for the district court. Well, the court said that the absence of expert testimony was apparently being accepted as some sort of concession, but there was no available viewpoint of a person qualified and skilled in the field to state under oath that this would have been obvious. What the district court had before it was, first, Johnson's concession, which I read before, that his total agreement as to what a person of ordinary skill in the art would be. So there was no dispute there. I'm trying to understand why the district court put so much weight on the absence of an expert. Oh, because I think the district court, in all due respect, was somewhat overwhelmed by the argument that fusing was a complex procedure, which it may have been for the operation of the machine, but this, of course, is a method claim. The judge said, well, if you had a patent on an artificial heart, and you said, well, the claim is just replacing the old heart with a new heart, that you can't have a patent on that. And he got overwhelmed with the complexity of the underlying technology. But if you look at the claims, the claims only claim putting two electrodes on a common surface, putting two electrodes on a surface other than a surface touching the wire, putting two electrodes so that the second is remote from the commutative bar. It's not on the bar, it's on the top. So he went beyond the claims and said, well, the technology, the machine to do this may be complex. Just like if you had a patent claim saying, I claim a method of saving a human life by putting a new heart in the old heart. If that were the claim, then of course the fact that the medical technology involved could be complex would be irrelevant. So what you're saying, I gather, is that the attorney argument was an adequate substitute for what the expert might have testified to. And I wonder, the district court obviously didn't think so. No, Your Honor, that's not what I'm saying. I'm saying that the documents and the admissions speak for themselves. I mean, you don't need an attorney argument if I sue on a promissory note and I present the note and an affidavit of non-payment. I mean, I don't need an attorney argument to explain what that is. If you have a patent that says the purpose is to determine where to locate a second electrode when you cover the copper face with graphite. If you have an expert admitting that the only difference, their expert, that the only difference between the prior arc and the invention is the location of both electrodes on top. Now, if I were to agree that an expert was not necessary to be provided, isn't the most that you can expect on appeal would be a remand for the district court to consider the issues that you're presenting to us? I think since, obviously, this is a question of law, and KSR says that if there's a finite number of solutions for mechanical patenting, and here it's less than finite. It's definitely finite. It's only one. As a matter of law, this would be obvious. I mean, there's the other thing where the patent office said that the only difference between the prior arc and the current invention is the location of the second electrode. And they compared it with welding patents. And they said, well, welding patents could be combined with fusing patents. And you'd note that both electrodes are on top. And Joyelle would argue to the patent office that welding is so different from fusing that you can't combine it. It's not analogous. But every single article that's of record, every single patent that's of record, discusses fusing and welding together. So they're definitely analogous. And that was the second part of the obvious, as a matter of law, argument, was that analogous arc showed two electrodes on top. There were the briefs before, but that's what the prior arc shows. They're combinable. These were articles written by Joyelle saying that welding and fusing are done on the same type of machine. Welding and fusing are so analogous. I understand that you're arguing the merits to us. Okay. We've exhausted your time, but we'll reinstate your rebuttal time. And let's hear from the other side. Okay. Thank you. Thank you. Good morning, Your Honors. Clint Beasley, Court of Appeals, Department of Human Rights, alongside Sandra for Plaintiff Athlete, Joyelle Products, Incorporated. I want to start by going to one of the questions, Your Honor, that a judge asked Mr. Weiss regarding the possibility of a remand in the event that the court found that the judge below erred in finding that there was a need for expert testimony. First of all, the issue of whether or not expert testimony was needed has not been appealed. It's no longer argued in the briefs. It was not raised as it's required to be raised under Rule 25 in the Statement of Issues. So I don't think it would be appropriate to even consider whether or not expert testimony was needed because that issue was waived on appeal. But, however- What is your view on whether you appealed that? Frankly, I thought he was appealing summary judgment. The denial of the first summary judgment ruling where the judge said, I'm denying this because trial's imminent and I don't want to delay the trial. As I read their opening brief, that's the only issue they've appealed. Are the matters of appeal filed after final judgment? Yes, it is, Your Honor. And it refers to the final judgment? That's correct, Your Honor, because you can't appeal summary judgment ruling until after final judgment is entered. But once final judgment is entered, under the merger rule, any prior interlocutory order becomes appealable. And under the Federal Circuit rule, you're required to attach a copy of any order that you believe that you intend to appeal. And the only order that was attached besides the jury verdict, the judgment on the jury's verdict, entering a damages amount, was the June 2008 order denying summary judgment in order to avoid a delay of trial. But to get back to my initial point, so even assuming you were to reach the issue of whether or not expert testimony is required, as Your Honor pointed out, if the court were to rule in that way, the only relief available to the defendants is whether or not it was required. Okay, well, assuming it was a remand, they did not ask for a remand to the reply brief, and I would submit that under clear precedent of this court. Well, in that case, are you saying that you'd prefer a reversal to a remand? No, we would not, but we believe that they waived the right to ask for a remand because they didn't raise it to the reply brief. The court would prove that they were serious in justice. Well, let me go back then to what the district judge ruled. He did not say, I'm granting summary judgment solely because you don't have an expert. The way this case was litigated, throughout discovery, when we asked in interrogatories, when we served 36 notices, when the pretrial order was negotiated and submitted to the court, Johnson Electric consistently told us, when you get our expert report, you'll know what our theory is on validity. We're not relying on faculty. We're relying on an expert. So then we got to the point where we finally, at the end, a year after fact discovery ended, when they said, we're not going to tell you about validity until our expert report, we finally learned what their expert report is. We deposed their expert. He's a resistance welding expert. We didn't know the most basic principles of commutator fusing, which is a very different art. Is this deposition interaction in the record? It's not in the appendix, but it was filed with the court and our motion to exclude this witness so it's available to the court. It's on the docket. It's a public file docket. But that's what led Johnson to withdraw their expert because their expert was so deficient. Well, let me just add, you can't conceive hypothetically of a case in which obviously this was simply women being out of law, that certain things are undisputed, that there's one particular claim limitation, that the court made a judgment on its own as a matter of law. If the facts are not disputed. Why is this case different from that case? Because there were many facts that were disputed. Such as? Such as contrary to what Mr. Weiss says, there was no agreement on what the level of ordinary skill in the art was. We had in our expert's report a detailed description of what he believed the level of ordinary skill in the art was. Mr. Weiss, read something to us that says otherwise, in terms of the level of skill. We've explained in our briefs that they basically picked and chose parts of what our expert said. They agreed with parts of what our expert said and did not agree with other parts of what our expert said. They just ignored it. So, if you want to... We say, and in our opposition to their cross-cultural presumptive judgment, we said that the level of ordinary skill in the art is disputed because they did not adopt in whole our expert's view of the level of ordinary skill. They're the people who chose those parts that they thought they could agree with. There's also something that Mr. Weiss repeated here today several times, which he says at least three times in his briefs, which is totally false. There is no admission by our expert that there's only one element different between the prior art and the claims in this patent. If you look at Mr. Weiss' briefs where he says that, and you look for citations, you won't find anything. Or if there is a citation, you go to it. It does not support that proposition. We've cited in our papers extensively, and it's at... I will tell you exactly where it is. There was a whole discussion in our expert's opinion, in our expert's report, which was verified in connection with the summary of the motion, where he explained that there were at least two elements missing from the prior art that are in the claims, in the independent claims of our patent. And as to the dependent claims, you have a third element in a number of those that are different from the prior art. Did your expert also justify it? Our expert was supposed. It was never a trial of validity. Okay. He was supposed, and I don't recall... He certainly didn't admit it, and I don't know if he was asked that question. So, Johnson litigated this case from the view, right from the start, that they were going to prove validity through expert testimony. Then, when their expert fell apart, they withdrew him, and for the first time, several weeks before trial, we learned that they're going to rely on essentially attorney argument to prove obviousness. The district judge did not just... Not necessarily. If you had a trial, they wouldn't have an opportunity to discuss the issues with your expert. The district judge ruled that they didn't have an expert, and in opposing our summary judge of motion, they didn't identify any evidence they had that they could reduce that trial. At the summary judgment stage, it's their burden to come forward with affirmative evidence that they're going to be able to present a trial to establish the elements of obviousness, and the district judge found that they did not do that. They didn't list any witnesses in the final pre-trial order, which is a binding document on the parties. They didn't list a single witness who was... They identified one expert on the issue of obviousness, who they withdrew. They identified two fact witnesses. In opposing summary judgment, they said we're going to present three witnesses at trial. One of those is not listed in the pre-trial order at all. The other two were listed, but they were not listed on invalidity. They were listed for background on prosecution history, on the market for carbon commutators, and discussion of the prior art. And in the contested facts section... You said discussion of the prior art? Yes. Excuse me? Sorry, you said that this expert was not listed for obviousness, but was listed for discussion of the prior art? No, this is not an expert. These are fact witnesses. These are adverse fact witnesses. Is it prior art? They said merely that they were going to call them to discuss the prior art. But in the contested facts... And that has no relationship to validity? Why hasn't anyone discussed prior art? It may be background facts, but in the contested section, the contested facts section of the pre-trial order, they are required to lay out in detail all the facts they're going to prove to establish their affirmative defense. And in the contested facts section of their pre-trial order, they don't list anything regarding level of ordinary skill in the art, differences between the scope and content of the prior art, the differences between the prior art and the claimed invention. They don't list any of that. What they said instead, and it's at page 1121 of the appendix, is that where it's the section titled Defendants' Contested Facts. They're required in that section, and in the Third Circuit, this document is considered very seriously. Before you go to trial, you have to lay out your case. And actually, the instructions for this section, which are on page 1113, say that proofs shall be limited at trial to the matters set forth below. Failure to set forth any matters shall be deemed a waiver thereof. So when you look at their contested facts section at pages 1121 through 1125, you will see references to dates of certain patents. You'll see references to what happened in the prosecution. You won't see a single assertion of fact that relates to what was the level of ordinary skill in the art, what was shown in the prior art references. They don't even mention I don't believe the prior references they're now relying on. They mention one of them. But instead, what they said is defendants provide a preliminary list of contested facts with respect to liability, patent invalidity, expecting to revise and or supplement after expert discovery is complete. Well, expert discovery was completed. Their expert fell apart. They withdrew involuntarily. They didn't ask the court for leave to get a new one. I think their answer, part of their answer may have been that a lot of what they were saying was a connection with anticipation and not obviousness. Is there anything in the statements you're reading that distinguish between obviousness and anticipation? No, not at all. That's the first time I've heard that argument was today. I've never heard them make any distinction between that. And that's in the documents that you're referring to distinguish between what's necessary for obviousness and what's not? Not at all. And they never moved. Although they said we expect to revise and supplement this contested facts section after expert discovery is complete, they never moved to do that. So as we were heading into trial, as the judge was considering our summary judgment motion, they had a pretrial order in which they had not explained in any way what facts they were going to deduce in that trial. District Court's opinion when he granted our summary judgment motion and denied their cross-motion for summary judgment, said they haven't come forward with any evidence of what these experts are going to testify to. What these fact witnesses are going to testify to. They've already abandoned their expert testimony. Now they claim there's three fact witnesses they're going to show up at trial. They're all adverse witnesses. But assuming this case is properly enforced, let's leave aside the questions you raised initially. What are we allowed to do here? I mean, let's assume are we supposed to look at, he says one difference, let's say three differences. Let's assume we look at the three differences. Are we free to conclude the District Court was wrong? We don't think this is all that complicated and we can determine here as a matter of law that these three distinctions would have been obvious? I don't think you're free to do that because Your Honor, because I don't think that that issue was appealed. But let me tell you this Court has a long history of precedence where this Court says that a party cannot rely on to defeat semi-judgment or in support of semi-judgment. And there's a reason for that. Attorneys are not persons of ordinary skill, Your Honor. Attorneys are not experts. That's what our comment says, that they were referring to documents throughout. Attorneys can certainly point to documents in their argument. They can, but they're not competent to testify in trial as to the meaning of those documents. And the reason why this Court does not allow attorneys' unsubstantiated attorney argument to serve in lieu of real evidence through a fact witness or through an expert witness is because attorneys don't know the technical facts. They're pretty much unconstrained in terms of their arguments and what they make. And a perfect example of that is the primary theory that they're relying on for obviousness. Their theory, they state it five times, no less than five times in their opening brief. And it's at pages um 7, 8, 9, 20, and 25. Their primary theory is the reason you have to move the electrode is because once you put the carbon on it, you can't create a circuit because the carbon's not conductive. That's false. If the carbon wasn't conductive, this motor wouldn't work. This is, this commutator is the point of interface between your external power source and getting electricity into these coils. There's carbon brushes that are used that are attached to your power source that touch this and they inject electricity into the motor and what it does is it creates magnetic forces in these coils and it spins, but you have a continuous contact and this is your point of interface for conductivity of getting the external power source into the motor. And it's also evident from the fact that these carbon segments are segmented. They're electrically isolated from each other because there was no segments here. The motor wouldn't work again because it would just short out. That's why the court has set a bright line rule that you can't defeat summary judgment by a lawyer just making up whatever he wants to make up, what he interprets from the documents. Because he's not an expert. He's not constrained as an expert is by having credibility and having knowledge of the technology and putting his name on the line and testifying under oath as to what these documents mean and I submit that that's exactly what they're doing here. It's attorney argument whether it's knowingly or perhaps more likely through ignorance, making up arguments that have no basis in technical effect. When the judge said and wrote out a lawyer in denying their motion for summary judgment that there were issues of material fact, how then could the judge grant your motion having already told your opponent that there were issues of material fact? Because he was looking at the record they were presenting. They were presenting a bunch of technical documents that they raised a lot of issues that he did not believe he could conclude as a matter of fact were undisputed. He hadn't even put in an opposition to that brief. I don't know. I can't really speak to why the judge added that. But the order says also that he was denying that motion because he didn't want to delay trial. I don't know what was in the judge's mind at that point. He certainly knew at that point that he was expecting to have dueling expert reports and the magistrate actually said that in the pretrial conference the judge didn't have the citation handy but he basically said how can we grant summary judgment when you're going to have dueling experts? What happened in this case... Another question. Because we didn't give your opponent a chance to conclude his introduction. On the traveling of damages, how did that come about? It was a motion for it was a motion filed post trial based on the stipulation of willful infringement. And we went through the nine main factors. We made a motion post trial. Just the way it fell in, just ordinarily it came about. We get a verdict from the jury. We move to increase them pursuant to section 287 I forget the section of it. There's a section of that that allows for enhanced damages. We made a motion at that point. We argued all the factors. And the judge, in that ruling, based on everything he had seen in the case up to that point, concluded that it wasn't even a close case on validity. And he was basing that primarily on the fact that the ground on which he granted summary judgment was that they didn't have an expert. They didn't have any fact witnesses. They didn't oppose summary judgment by saying here's what this witness is going to prove and here's how we know he's going to say it because we took his deposition and he admitted it or anything to that effect. And the judge said this isn't even close. They didn't put on a case. They didn't have any evidence. The judge never reached the issue of what the prior art means and what it says because Johnson never presented any real evidence that required the judge to get to that point. He basically ruled that summary judgment was merited because they simply had no case. I mean, there's a number of on top of the problems with the merits there are a whole litany of procedural problems with this appeal. We are out of time. Thank you, Your Honor. Mr. Weiss, we've run over 25 minutes. First, as to the excuse me, Your Honor, the purpose of the invention, if you look at the patent in column 2, line 33 to 44, it says that there is a known armature for use in a combustion engine fuel pump using a gasoline-alcohol mixture which provides the commutator bars in the shape of individual wedges arranged in a circle within a common plane. Then it says, due to the corrosive effects of alcohol, a corresponding wedge-shaped block of carbon material is bonded to the face of each commutator bar. And then it says, although these commutators are of a tank type, there is no suitable location for the placement of the ground electrode on the commutator bars to permit the aforementioned fusing process. So the market-driven need was, as the patent says, was placing this graphite protection over here. With respect to what the invention was about, although we weren't allowed to go into it at jury trial, I was permitted to ask Mr. Warner a few questions showing him that exhibit that's before Your Honors today. And if I could just turn to the transcript. Before we run out of time, I'm sorry. I mean, firstly, on the procedural issue, your view of what you appeal is... It's the final judgment. The judgment of infringement. The statutory defense to infringement under 35-282-2 is invalidity. So we're appealing the judgment of infringement. The first sentence of the blue brief says, this is an appeal from a final judgment of patent infringement. The case law says that the underlying motions, the motions for summary judgment merge in the final judgment. The case decided before Judge Michelle Bryce and opposed it. The Revolution Eyewear, the Apex case at 563 F. 3rd, 1358, says that the denial of a motion for summary judgment may be appealed even after a final judgment of the trial if the motion involved a purely legal question and the factual disputes resolve the trial do not affect the resolution of that legal question. So that's my question. Are you appealing under the final judgment? Are you appealing what you're really appealing as a summary judgment against you? Correct. You should have granted summary judgment against me. You should have granted summary judgment for us since it's a purely, as the case said, it's a purely legal question. And you have the admissions. Mr. Buckingham said there's nothing of record. If I could just read just one thing from the record which is the trial transcript. It's Appendix 3036 through 3037. And this is my course examination of Mr. Warner, the head of Joyelle. It's of line 17. It says, now this is a model of the copper armature. The copper one that you have. Correct. Can you see from there? Yes. Question. And then this copper armature, this is placed one electrode here and one electrode on top. That's the pyrite. One electrode here on the side and one on top. Answer, yes. Now this is the graphite covering that you were talking about earlier that protects the copper from corrosion. Answer, right. That's the graphite covering. Question. Your process did not invent this graphite covering, did it? No. It didn't invent any of the components of the armature, did it? No. Your process said that instead of putting the electrode here, where you can't put it, put the second. We know where it is in the transcript. Yes. 3037. Okay. Let me just ask you one quick question because we've only got a few seconds. With respect to the willfulness issue that Judge Newman raised, did you attempt to put on a defense with respect to willfulness damages based on your belief that subjective or objective, I mean that defense of validity in this case, that the willfulness triple damages should not be In good faith, we knew, Johnson knew of the existence of the patent. I know what the law is. I wasn't going to make an argument that wasn't based in fact. They knew of the patent. They did not get a prior opinion as to validity. And they used the process, the only available process actually, of putting both electrodes on top. So they legally willfully infringed. So I took advantage of 35 USC 282, which provides that invalidity is a defense to infringement. And there's a final judgment of infringement. And I'm appealing on the real basis of appeal. I wasn't going to appeal on something that was not true. I mean they willfully infringed. So no, I did not defend on that. But if I can make one more point with respect to a person of ordinary skill in the art. I did read through your honors that there was agreement. It's it's it's appendix page 2062 footnote 10. It was Jonathan's papers filed with the district court. It's the first sentence. It says Johnson agrees to a plaintiff. And it goes on to what a person of ordinary skill in the art is. And if I could just respond to one more thing that the adversary said with respect to the pretrial order. On page 4 of our blue brief we point out that the pretrial order, Johnson listed Mr. Reardon, a fact witness working for JL, Mr. Warner as trial witnesses concerning quote, liability parenthesis patent invalidity, close parenthesis, unquote. This is our pretrial order. So we listed Reardon and Warner as trial witnesses concerning liability, patent invalidity. That's appendix 81121. And then we put in the pretrial order Johnson intends to close to Reardon as a witness with respect to the prosecution of the application that matured into the 015 patent. And prior art articles and patents concerning fusing and welding. And that's on page 4 of our brief with the appendix lines. So we did list witnesses. They were to explain the 102 prior art and of course help with the obviousness as well. But obviousness is clearly a question of law. There's an admission by Mr. Warner and Mr. Mangan that the only differences between, the only difference between the prior art and the invention is with the cover you put it here and Mr. Mangan's admissions... I think we have everything you directed us to. If I could just read for your audience Mr. Mangan's admissions are appendix 1979 to 1985. Thank you. Thank you both. This is taken under submission.